UNITED STATES DISTRCT COURT
NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | |
|---|---|
| CHANNEL (H), INC., | |
| *Plaintiff*, | Case No.: 4:17-cv-00916-O |
| v. | |
| CQUENTIA SERIES, LLC; HTG SERIES, a series declared by CQUENTIA SERIES, LLC; and D. ALAN MEEKER, | |
| *Defendants*. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE SUR-REPLY IN SUPPORT OF DEFENANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [DOC. 26]**

**TO THE HONORABLE REED O'CONNOR, UNITED STATES DISTRICT JUDGE:**

Plaintiff Channel (H), Inc. ("Channel H" or "Plaintiff"), hereby responds to Defendants' CQuentia Series, LLC ("CQ"), HTG Series ("HTG") and Alan Meeker (collectively, "Defendants'") Motion for Leave to File ("Motion for Leave") a Sur-Reply ("Sur-Reply") in Support of Defendants' Response to Plaintiff's Motion for Preliminary Injunction filed on Wednesday, December 27, 2017 [Doc. 26] and, state as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1.      On November 17, 2017, **Channel H** filed its Motion for Preliminary Injunction [Doc. 7] and Memorandum and Brief in Support of Plaintiff's Motion for Preliminary Injunction [Doc. 8] (collectively, the "**PI Motion**").

2.      On December 12, 2017, Defendants filed their Response to Channel (H)'s Motion for Preliminary Injunction and Brief in Support [Doc. 11] (the "**Response**").  The Response asserted a number of misleading, contradictory, and demonstrably false factual arguments, and

misstated the applicable law governing misappropriation of trade secret claims, under both Federal and Delaware law. The Response also attached an Appendix in Support of Defendants' Response to Plaintiff's Motion for Preliminary Injunction and Brief in Support [Doc. 12] (the "Response Appendix").

3.      After considering Defendants' Response, the Court entered an order, which noted that: "Defendants argue, among other things, that Plaintiff failed to sufficiently prove that Defendants misappropriated its technology because their technology is not fully automated and because Plaintiff has admitted it has no personal knowledge of the manner in which Defendants' technology operates." The Court required Plaintiff to file a Reply by no later than Friday, December 22, 2017 [Doc. 15] (the "**Order**"), ostensibly to address Defendants' arguments.

4.      On December 22, 2017, Channel (H) filed its Reply (the "**Reply**") [Doc. 16] and supporting Appendix (the "**Appendix**"). [Doc. 17]. The Reply and Appendix (collectively, "Reply Papers") directly address and/or rebut Defendants' arguments that Plaintiff: (1) "failed to sufficiently prove that Defendants misappropriated its technology because their technology is not fully automated," and (2) "has admitted it has no personal knowledge of the manner in which Defendants' technology operates," among other arguments.

5.      On December 27, 2017, Defendants filed Objections to the Reply Papers and Motion to Strike same. *See* [Doc. 25].

6.      Also on December 27, 2017, Defendants filed the Motion for Leave [Doc. 26], and Defendants' Sur-Reply [Doc. 26-1] (collectively, the "Sur-Reply Papers"). Defendants also filed an Appendix in Support of Defendants' Sur-Reply [Doc. 26-2] (the "Sur-Reply Appendix"), which contains three new Declarations and additional documentary evidence. Although Defendants' Motion for Leave does not explicitly state in detail the bases for why leave to file a

sur-reply should be granted, Defendants allege in conclusory fashion that Plaintiff's Reply advances "new arguments and evidence" and claim that the Reply Papers "improperly attach evidence in violation of Local Rule 7.1(f))". *See* [Doc. 25] at 2.

## ARGUMENT

### I. Defendants have failed to demonstrate that a sur-reply is necessary

Sur-replies are the exception, not the norm, and Defendants have asserted no legal or factual basis warranting a grant of leave to file a sur-reply in this case. "Sur-replies, and any other filing that serves the purpose or has the effect of a sur-reply are highly disfavored, as they usually are a strategic effort by the non-movant to have the last word on a matter. The court has found that sur-replies usually are not helpful in resolving pending matters and only permits pleadings beyond Local Civil Rule 7.1 in exceptional or extraordinary circumstances." *Lacher v. West*, 147 F.Supp.2d 538, 539 (N.D. Tex. 2001) (denying motion for leave to file a sur-reply brief); *see Official Brands, Inc. v. Roc Nation Sports, LLC*, 2017 WL 345616, at *4 (N.D. Tex. Jan. 23, 2017) (noting where the non-movant filed a sur-reply without first being granted leave that it "looks like a textbook strategic effort to have the last word on a matter—exactly what the Local Rules seek to prevent."). Therefore, a sur-reply is only appropriate by the non-movant when the movant raises new legal theories or attempts to present new evidence at the reply stage. *See Murray v. TXU Corp.*, 2005 WL 1313412 at *4 (N.D. Tex. May 27, 2008) (denying motion for leave to file sur-reply when movant raised no new arguments in its reply).

The sole basis that Defendants assert warrants (and provide authority for) a grant of leave to file a sur-reply on Plaintiff's Motion for Preliminary Injunction is the fact that Plaintiff filed a declaration including exhibits with its Reply. In support thereof, Defendants rely upon *T & E Investment Group, LLC v. Faulkner*, 2012 WL 12822296 *2 (N.D. Tex. Sept. 27, 2012) for the

proposition that it is improper to attach evidence in support of a pleading with a reply—implying the bare fact that evidence was submitted with a reply (regardless of the nature the evidence) warrants granting leave for a sur-reply to address that evidence.  Defendants' failure to assert a cognizable basis in the Motion for Leave itself warrants denial of leave to file the sur-reply. For example, in *Ponder Research Group, LLP v. Aquatic Navigation, Inc.*, 2009 WL 2868456 (N.D. Tex. Sept. 4, 2009) the court denied a motion for leave to file a sur-reply when the party claimed that a sur-reply was necessary "to address several misstatements of law and fact" but failed to identify any specific misstatements of law or fact and failed to otherwise establish why a sur-reply was necessary." *Id*. at *14.

Moreover, Defendants' reading of the Local Rules is inconsistent and inaccurate, and Defendants' reliance on *T & E Investment Group, LLC* is misplaced.  <u>First</u>, The Local Civil Rules for the Northern District of Texas provide that a "party who relies on materials-including depositions, documents, . . . declarations, . . .or other materials-to support or oppose a motion must include the materials in an appendix." Local R. 7.1(i)(1). "The appendix must be assembled as a self-contained document, separate from the motion, response, **reply**, and brief." Local R. 7.1(i)(2) (emphasis added).  Indeed, after the District Judges of this Court amended the Local Civil Rules to require an appendix with motions in 1999 (*see* Special Order No. 2-48 dated March 5, 1999), the Local Civil Rules were amended *again* in 2004, to specifically *add* the word "reply" to the appendix rule. *See* Special Order No. 2-57 dated July 21, 2004 ("local civil rule 7.1(i)(2) is further amended as follows (changes to the current rule are <u>redlined</u>): The appendix must be assembled as a self-contained document, separate from the motion<u>, response, reply</u> and brief.") (emphasis in original).  Therefore, any argument by Defendants that Plaintiff violated the local rules by filing an appendix with evidence *or* that they should get the benefit of a sur-reply,

*ipso facto*, that documentary evidence and a declaration were filed with Plaintiff's Reply Papers is inaccurate.

Indeed, Courts in this district routinely permit, accept and consider evidence submitted with replies in conjunction with preliminary injunction motions—without granting leave to file a sur-reply. *See, e.g.*, *Franciscan Alliance, Inc. v. Burwell*, 227 F.Supp.3d 660, 671 n. 15 (N.D. Tex. Dec. 31, 2016) (considering declaration including exhibits filed with reply). In that case, there was no argument that the submission of additional evidentiary materials and a declaration were improper.

On the contrary, in *T & E Investment Group, LLC* (the sole case cited by Defendants), the plaintiff provided "no evidence" in connection with its opening motion, then, when the plaintiff did attach two exhibits with its reply brief, the Court noted that "such evidence is not contained with their original motion nor would be sufficient to support a motion for an injunction." 2012 WL 12822296 at *2. <u>First</u>, although that court noted that while the "general reply rule" (Local R. 7.1(f)) did not refer to an evidentiary appendix, as stated above, the general appendix rule (Local R. 7.1(i)(2)) explicitly does refer to appendixes with reply. <u>Second</u>, here, Plaintiff *did* file evidence with its original motion, and the additional evidence provided with the Reply Papers was submitted to rebut misleading or implausible factual claims made by Defendants in their Response papers. <u>Third</u>, the additional evidence submitted by Plaintiff was already *known* to Defendants, and in Defendants' possession – all of the attached exhibits concerned emails and attachments from or to Defendants, or evidenced meetings or conversations or documents shared with Defendants. As Defendants were aware of the information underlying these exhibits, they were not "new evidence" related to "new arguments." Thus, *T & E Investment Group, LLC* is inapposite. <u>The fact that Defendants chose not to address these exhibits – and still have not –</u>

because they undermined the claims that Defendants made, does not mean that Defendants did not have an opportunity to address them.

Accordingly, as explained in further detail below, Defendants have not established that the requisite "exceptional circumstances" for a grant of leave to file a sur-reply exists.

## II.     Defendants should not be allowed a sur-reply where Defendants were in possession of the disputed documents.

As a threshold matter, there is no prejudice as to the introduction of the exhibits submitted on Reply, as Defendants have had personal knowledge and/or possession of **all** of the documents and underlying events that Plaintiff evidenced in its Reply Papers—well before this case was even filed.  For example: (1) Exhibits L, M, N, Q, R, S, T, W, and X are all emails (and their attachments), text messages and/or emailed meeting requests *between the parties*; (2) Exhibits P, U and V are Robert Capelli's contemporaneous notes of the three telephone conversations he had Defendants and referenced in the Verified Complaint and Original Motion; and (3) Exhibit Y is a screenshot of a file, stating "Manual Process UCSD," and demonstrating that it was shared with Kenny Woods, i.e. "kenny@cquentia.com."   Although Plaintiff referenced the content of many of these documents in its Verified Complaint, Defendants chose not to acknowledge them, because they undermine the veracity of the arguments Defendants make in opposition to Plaintiff's Motion for Preliminary Injunction.

Defendants now seek to file a sur-reply, purportedly to address those very documents, which Defendants *chose* not to address in their Response.  On Reply, and pursuant to this Court's Order [Doc. 15], Plaintiff submitted evidence, which was necessary to address and/or rebut Defendants' misleading, implausible and inconsistent arguments.  The evidence submitted by Plaintiff was evidence that Defendants was on notice of and was in Defendants' possession.  In other words, Defendants' complaint about the propriety of Plaintiff submitting additional

exhibits on reply and in rebuttal to the Response (i.e., to prove that the things Defendants were saying were untrue) is disingenuous.

Indeed, had Defendants not made a series of implausible, misleading and dubious claims concerning the subject matter of documents then in their possession, there would have been no need for Plaintiff to file additional documents to rebut those claims.  By attacking the filing of those documents, Defendants have attempted to shift the conversation away from what those documents say, and what they mean for the veracity of Defendants' claims.  Indeed, Defendants' proposed sur-reply fails to address the substance of those documents, or the claims, which they refute.  As such, Defendants were not harmed by the submission of rebuttal evidence, nor needed additional time to review such evidence.

Plaintiff also filed copies of all of its exhibits through the ECF system, and all of the exhibits – including exhibits filed under seal – were available to Defendants' counsel for download, as of December 22, 2017 at 5:34 PM CST. [Doc. 18].  Defendants' counsel petitioned the Court to allow it to file a sur-reply, in large part based on Plaintiff's purported failure timely to serve those exhibits on Defendants. [Docs. 19, 20, 24].  Defendants painted Plaintiff as having failed to serve Defendants with copies of exhibits, before leaving for the holidays, in an either willful or negligent dereliction of Plaintiff's responsibilities. *See id.*  Defendants, however, later acknowledged that the issue was on their end – that for whatever reason, Defendants – who are represented by two highly-regarded law firms – were unable between them to download documents from the ECF system, which they later confirmed that they successfully were able to download. *See* [Doc. 23]. Although Defendants acknowledged having been timely served with the sealed exhibits from Plaintiff, Defendants still have not informed the Court of what transpired, or made any effort to correct the record.

In similar circumstances, other judges in this District have rejected a non-movant's attempt to file a sur-reply. For example, in *Austin v. Kroger Texas L.P.*, 2016 WL 13222248 (N.D. Tex. Apr. 5, 2016) the plaintiff filed a motion for leave to file a sur-reply in response to the defendant's reply in support of its motion for summary judgment. The *Austin* plaintiff alleged that the defendant raised a new argument regarding the plaintiff's lack of evidence to establish causation. *Id.* at *1. The *Austin* court rejected the plaintiff's argument. The *Austin* defendant's reply was "responsive to arguments raised and evidence relied on by [plaintiff] in his summary judgment response," which was permissible and plaintiff had previously had an opportunity to raise the issues discussed in his reply. *Id.* at *2. Therefore, the Court found that a sur-reply was inappropriate.

### III.    Even if Defendants' sur-reply were procedurally permissible, they simply rehash arguments made with their Response and that otherwise lack merit

The ostensible purpose of a sur-reply when *new* arguments and evidence in support thereof are submitted with a reply is to provide the non-movant an opportunity to respond to avoid prejudice—not simply to rehash arguments made in a response solely to get the last word. *See* Lacher, 147 F. Supp. 2d at 539-40 (noting that because "the movant is entitled to file the last pleading" and "sur-replies . . . usually are a strategic effort by the nonmovant to have the last word on a matter," that no "exceptional circumstances" nor prejudice warranting leave to file a sur-reply exist when no new arguments are considered, "(as opposed to evidence)," in a reply brief.).  Defendants argue that a sur-reply is necessary to address new evidence and arguments, however, the proposed Sur-Reply fails to address *any* new exhibits, and repeats many of the same arguments Defendants already made in their Response. *See* [Doc. 26-1].  Defendants also make several gross mischaracterizations concerning evidence submitted by Plaintiff to rebut other false claims previously made by Defendants, without

addressing the claims that the additional evidence was submitted to rebut.  As such, Defendants'

Motion for Leave to File Sur-Reply, should be denied. *See Official Brands, Inc.*, 2017 WL

345616, at \*4 (striking improperly filed sur-reply as "procedurally defective" when filed without

leave and where arguments therein lacked merit).

Here, as in the case with Defendants' sanctions motion [Doc. 13] and Objections to

Plaintiff's Reply and Appendix and Defendants' Motion to Strike [Doc. 25], Defendants' Motion

for Leave is clearly dilatory:

1.       In response to Defendants' claims that Defendants contributed trade secrets to

Plaintiff's Platform in December 2016 or January 2017, Plaintiff submitted evidence that it made

a *pitch* on May 26, 2016.  *See* Reply Papers, [Doc. 17] at Exhibits L and M. That pitch and pitch

deck covered a high-level view of what Plaintiff's system could do – Plaintiff did *not* disclose

trade secrets at that meeting, or expose the source code for Channel (H)'s Platform, or expose

Defendants to the admin panel, or claim or admit that it did.  Defendants' claims that Plaintiff

disclosed its trade secrets by making a pitch of what Plaintiff's system could do (*see* [Doc. 26-1]

at 3), would be akin to saying that if Google told someone that they operated a search engine,

and what users could search, that Google would have disclosed their trade secret algorithm.  This

argument is plainly absurd.  Nor do Defendants explain how the agreements that they signed

with Channel (H) would not cover everything that Channel (H) shared with Defendants.

2.       Similarly, Plaintiff's reference to certain high-level functionality of the Platform

in Exhibit U is not the same thing as disclosing the underlying source code, admin panel, data

points, or workflow documents. *See* [Doc. 26-1] at 10-11. Channel (H) has a Website, located at

www.ChannelH.co, that describes in general terms what the company does – there is a world of

difference between explaining *what* you do and *how* you do it.  This argument is similarly specious and lacking in merit.

3.    The Sur-Reply simply repeats and rehashes Defendants' argument that Plaintiff has failed to establish misappropriation. *See* [Doc. 26-1] at 2, 5-10, 11-12. Defendants contend that Plaintiff's sworn statements and documentary evidence are conclusory; that Channel (H) cannot establish misappropriation without access to Defendants' Preauthorization Software Solution; that, without providing any details of how Defendants developed their Preauthorization Software Solution, the Court should take their word for it that they somehow developed it completely on their own in a matter of weeks after spending a year working with Plaintiff and having had full access to plaintiff's trade secrets; and that one of the four cases cited for the proposition that they Court may infer misappropriation from the short time frame and suspicious circumstances surrounding Defendants' development of a competing automated software solution, is allegedly distinguishable. And Defendants completely distort the governing legal standard in a misappropriation case.  Even heading "B" grossly misstates the proper legal standard and then spends the next five pages arguing in favor of a non-existent standard. *See* [Doc. 26-1] at 5-10.

4.    Interestingly, Defendants contend that Plaintiff's Preliminary Injunction Motion puts the health needs of UCSD's patients at risk, confirming that Defendants *continue to service the UCSD contract*. *See* [Doc. 26-1] at n. 2. UCSD had implemented an *automated* authorization solution from Defendants, and Channel (H) was that solution.  Defendants admit that their Preauthorization Software Solution is partially automated; admit that parts of the system were

programmed; admit that they use an admin panel; attach a screen shot of an admin panel with similar data fields to Plaintiff's; admit that they are still servicing UCSD hospital.[1]

5.      Channel (H) has been clear as to what its trade secret is and what it does. *See* Verified Complaint, [Doc. 1] at ¶¶13, 18-24, 27-32; PI Motion, [Doc. 7] at 12; Reply, [Doc. 16] at 2-4.   Defendants do not and cannot refute the evidence that the Channel (H) Platform has always involved a small manual component with some insurance companies, or that they ***knew*** this. Reply, [Doc. 16] at 3.   Instead, Defendants attempt to muddy the waters by arguing that somehow evidence that Defendants were on notice that some insurance companies had to be contacted manually establishes that Defendants were tricked into believing that no insurance companies had to be contacted manually.     Again, stripping away all of the high-inference language, Defendants' argument does not add up.

6.      Moreover, the Channel (H) software *does* fully-automate the patient pre-certification process, but some insurance companies do not yet allow automation, so, for now, the process is manual with respect to them – this is not a contradiction.   It is ironic that Defendants claim, on the one hand, that they were tricked into licensing the Platform because it required some manual contacts with insurance companies, while, on the other hand, Defendants contend that the Software Preauthorization Solution that they created to replace the Platform requires manual contacts with insurance companies. Defendants are engaging in subterfuge – the issue before the Court is whether Defendants threatened to misappropriate or misappropriated Plaintiff's proprietary Platform and process to build their own. The evidence speaks for itself .

---

[1] Moreover, the injunction sought by Plaintiff would only apply to a system that meets the criteria set forth in Plaintiff's moving papers – if Defendants' system is genuinely manual, and is not based on Plaintiff's Platform, it is hard to see that any patients would be affected, or that Defendants would have had any cause to worry about an injunction affecting UCSD patients.  Rather, Defendants are the ones who put patients at risk by misappropriating Plaintiff's trade secrets.

7.      Defendants contend that the Supplemental Capelli Declaration (*see* [Doc. 17]) is "rife with factual misrepresentations." *See* [Doc. 26-1] at 11.   This statement is plainly and demonstrably false.   Defendants, first, rehash and restate arguments from their Response. Defendants also mischaracterize numerous statements made by Plaintiffs in the Reply papers. For example, whereas Plaintiff submitted evidence that Floyd Russell received .pdfs of and also viewed the admin panel in person, Defendants' argue that they never disputed *access*.  *See* [Doc. 26-1] at 12.   The point was not just that Defendants had access to Plaintiff's trade secrets, but that Defendants' CTO actually *viewed* those trade secrets, which he previously denied. *See* [Doc. 12], Russell Decl. ¶ 4.   Floyd Russell now acknowledges having received the .pdf of the admin panel. *See* [Doc. 26-2] Supplemental Russell Declaration ("Supp. Russell Decl."), ¶ 4.   The language that he chose to program Defendants' automated software solution in is irrelevant.

8.      Floyd Russell attaches a redacted screenshot of the admin panel for Defendants' preauthorization software solution to his Supplemental Declaration. *See* [Doc. 26-2] Exhibit C-1. This page is important and appears to be evidence that Defendants are using an automated, software-based, pre-authorization process, which contains similar fields to the ones in Plaintiff's admin panel.   That Defendants changed some of the names for the fields on the graphical interface of the admin panel and moved them around does not make their entire software solution "completely different" from Plaintiff's.

9.      Defendants also submit a declaration from Kenny Woods, which attaches a number of emails that purport to establish that Defendants made numerous complaints about the Channel (H) Platform.   Defendants contend that – based on this single issue – that the Supplemental Capelli Declaration is "rife with factual misrepresentations," and should be disregarded in its entirety. *See* [Doc. 26-1] at. 11.   As a preliminary matter, all but three of the

emails attached to the Woods Declaration pre-date the launch of the Channel (H) automated platform, and have no bearing on whether the system that launched functioned properly – they are of no evidentiary value.  Of the three email "complaints" sent after the platform went live, Defendants cherry picked the complaint emails from email strings, to create the impression that they had made legitimate complaints.  In one case, however, the issue that Kenny Woods was complaining about was actually caused by CQ, and Floyd Russell acknowledged responsibility. In the other two cases, the issues were minor and were resolved promptly.  Upon the Court's request, Plaintiff will make the full email strings available.

10.     Whatever day-to-day issues that Defendants claim that they complained about, there was never an email or letter or any other communication that Channel (H)'s platform *did not work*.  There was never a notice of breach; no claims that patients were not being properly pre-approved; and no reference to failing to meet performance metrics. This is what Plaintiff meant by there were no complaints that the platform *did not work*.  Out of three months of the Platform being live, Defendants came up with three emails, one of which is directly controverted by evidence, which they withheld from the Court, and the other two are very minor issues that were addressed in emails that they withheld from the Court.  None of these rose to the level of a complaint that the Platform did not work.  And Defendants still do not explain why they were seeking a perpetual license of a technology that did not work, during almost the entire month of August 2017.

11.     For all of the reasons stated above, Defendants' proposed Sur-Reply is fails to rebut the evidence and arguments submitted in connection with the Reply, is wholly lacking in merit, and appears simply to be a strategic attempt to get the last word in.  For these and the rest of the foregoing reasons, Defendants' motion for Leave to File a Sur-Reply should be denied.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully request that the Court deny Defendants' request for an order granting leave to file a sur-reply.

Dated: December 30, 2017

Respectfully submitted,

By: /s/ *Brett E. Lewis*
Brett E. Lewis
(*pro hac vice*)
Justin Mercer
(*pro hac vice forthcoming*)
Lewis & Lin, LLC
45 Main Street, Suite 608
Brooklyn, New York 11201
Tel. (718) 243-9323
brett@ilawco.com
justin@ilawco.com

Of Counsel:

THE APGAR FIRM, PLLC

MARGARET HORTON APGAR
State Bar No. 24036805
1914 Skillman Street, Suite 110-150
Dallas, Texas 75206
(214) 707-2791 (Phone)
(214) 279-6050 (Fax)
   margaret@apgarfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record and constitute service on such counsel and their represented parties pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.1(d).

/s/ *Brett E. Lewis*
Brett E. Lewis