## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **CHANNEL (H), INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Case No. 4:17-cv-00916-O** |
| | § | |
| | § | |
| **CQUENTIA SERIES, LLC, HTG SERIES,** | § | |
| **A SERIES DECLARED BY CQUENTIA** | § | |
| **SERIES, LLC, AND ALAN MEEKER** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' ORIGINAL ANSWER

Defendants CQuentia Series, LLC ("**CQ**"), HTG Series ("**HTG**"), and Alan Meeker ("**Meeker**") (collectively, "**Defendants**") file this their *Original Answer* to Plaintiff Channel (H), Inc.'s original Verified Complaint and respectfully shows the Court as follows:

## RESPONSES TO FACTUAL
## ALLEGATIONS ASSERTED IN COMPLAINT

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendants make the following responses to the factual allegations set forth in the Verified Complaint of Plaintiff Channel (H), Inc.:

## STATEMENT OF CASE

1.     Defendants deny the allegations contained in Paragraph 1 of the Complaint.

## PARTIES

2.     Defendants admit that Plaintiff Channel (H), Inc. (referred to herein as "**Channel (H)**") has its principal place of business in Amesbury, Massachusetts as alleged in Paragraph 2 of the Complaint. Defendants are without personal knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in Paragraph 2 of the Complaint and, therefore, they are denied.

3.      Defendants admit that CQ is a Texas limited liability company as alleged in Paragraph 3 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 3 of the Complaint.

4.      Defendants deny the allegations contained in Paragraph 4 of the Complaint.

5.      Defendants admit that Meeker is domiciled in Texas as alleged in Paragraph 5 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 5 of the Complaint.

6.      Defendants deny the allegations contained in Paragraph 6 of the Complaint.

## JURISDICTION AND VENUE

7.      Defendants deny the allegations contained in Paragraph 7 of the Complaint.

8.      Defendants deny the allegations contained in Paragraph 8 of the Complaint.

9.      Defendants admit the allegations contained in Paragraph 9 of the Complaint.

10.     Defendants admit the allegations contained in Paragraph 10 of the Complaint.

## BACKGROUND

11.     Defendants deny the allegations contained in Paragraph 11 of the Complaint.

12.     Defendants admit that traditionally, when a patient visits a hospital, if a doctor recommends that certain tests be performed, it can take hours or even days to receive an approval from the patient's insurance company as alleged in Paragraph 12 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint.

13.     Defendants deny the allegations contained in Paragraph 13 of the Complaint.

14.     Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15.     Defendants admit that CQ and Channel (H) executed purported agreements to license Channel (H)'s allegedly copyrighted software as alleged in Paragraph 15 of the Complaint. Defendants deny, however, the remaining allegations in Paragraph 15 of the Complaint, including the allegation that Channel (H)'s "technology," if any, qualifies as a trade secret or copyright under any applicable law.

16.     Defendants deny the allegations contained in Paragraph 16 of the Complaint.

17.     Defendants admit that Meeker is CQ's Chief Executive Officer as alleged in Paragraph 17 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 17 of the Complaint.

18.     Defendants admit that CQ entered into an agreement with Channel (H) with an effective date of June 2, 2016 as alleged in Paragraph 18 of the Complaint. Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 of the Complaint and, therefore, they are denied.

19.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint and, therefore, they are denied.

20.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint and, therefore, they are denied.

21.     Defendants admit that HTG and Channel (H) executed that certain document titled "Channel (H) Cloud Data Services Terms of Service and Agreement," with an effective date of October 29, 2016, as alleged in Paragraph 21 of the Complaint. Defendants are without

personal knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 of the Complaint and, therefore, they are denied.

22.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint and, therefore, they are denied.

23.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint and, therefore, they are denied.

24.     Defendants deny the allegations contained in Paragraph 24 of the Complaint.

25.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint and, therefore, they are denied.

26.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint and, therefore, they are denied.

27.     Defendants admit that HTG and Channel (H) executed that certain document titled "Software License and Network Service Agreement," with an effective date of December 19, 2016, as alleged in Paragraph 27 of the Complaint. Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27 of the Complaint and, therefore, they are denied.

28.     Defendants admit that CQ desired to use a fully-automated software solution to pre-certify patients at UCSD for certain medical tests—namely, PGx genetic screening tests as

alleged in Paragraph 28 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 28 of the Complaint.

29.     Defendants deny the allegations in Paragraph 29 of the Complaint.

30.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint and, therefore, they are denied.

31.     Defendants admit that CQ desired to use a fully-automated software solution to that would be able to determine which patients would be pre-approved to take its PGx screen tests before they actually set foot in the hospital and that allowed hospitals to communicate this information to patients directly on the day of each patients' appointment as alleged in Paragraph 31 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 31 of the Complaint.

32.     Defendants deny that Channel (H)'s alleged software accurately pre-certified patients or accurately displayed them on CQ's dashboard as authorizations as alleged in Paragraph 32 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 32 of the Complaint.

33.     Defendants admit that CQ explored options to acquire Channel (H) because of the significant amount of resources already expended on assisting Channel (H) to develop and implement its alleged software as alleged in Paragraph 33 of the Complaint. Defendants also admit that Robert Capelli (referred to herein as "Capelli") rejected CQ's offer to acquire Channel (H) as alleged in Paragraph 33 of the Complaint.

34.    Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint and, therefore, they are denied.

35.    Defendants admit that CQ and Channel (H) executed that certain document titled "Term Sheet for Private Placement of Common Stock" on or about May 16, 2017 as alleged in Paragraph 35 of the Complaint. Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 35 of the Complaint and, therefore, they are denied.

36.    Defendants admit that CQ and Channel (H) executed that certain document titled "Term Sheet for Private Placement of Common Stock," which provided that CQ would acquire a number of shares equal to twenty percent (20%) of the issued and outstanding common stock of Channel (H) in exchange for, inter alia, a total capital investment of $225,000. Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36 of the Complaint and, therefore, they are denied.

37.    Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint and, therefore, they are denied.

38.    Defendants admit that Floyd Russell was provided access to Github as alleged in Paragraph 38 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 38 of the Complaint.

39.    Defendants admit that CQ's acquisition of Channel (H) never closed as alleged in Paragraph 39 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 39 of the Complaint.

40.     Defendants admit that CQ and Channel (H) attempted to negotiate CQ's acquisition of Channel (H). Defendants deny the remaining allegations contained in Paragraph 40 of the Complaint.

41.     Defendants admit that Channel (H) attempted to persuade CQ that Channel (H)'s allegedly copyrighted software was worth millions of dollars. Defendants deny the remaining allegations contained in Paragraph 41 of the Complaint.

42.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint and, therefore, they are denied.

43.     Defendants admit that Channel (H) agreed to discount its fees as alleged in Paragraph 43 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 43 of the Complaint.

44.     Defendants admit that CQ made a payment to Channel (H) on or about August 19, 2017 as alleged in Paragraph 44 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 44 of the Complaint.

45.     Defendants admit that CQ notified Channel (H) on or about August 29, 2017 that it no longer planned to use Channel (H)'s allegedly copyrighted software and that CQ would make preauthorization determinations manually "in-house." Defendants deny the remaining allegations contained in Paragraph 45 of the Complaint.

46.     Defendants deny the allegations contained in Paragraph 46 of the Complaint.

47.     Defendants deny the allegations contained in Paragraph 47 of the Complaint.

48.     Defendants deny the allegations contained in Paragraph 48 of the Complaint.

49.     Defendants deny that the agreements between the parties clearly anticipate and bar the type of conduct engaged in by CQ as alleged in Paragraph 49 of the Complaint.

50.     Defendants admit that the purported agreement between HTG and Channel (H) with an effective date of October 29, 2016 provides in part: "Accordingly, you agree not to: . . . (ii) modify, make derivative works of, disassemble, reverse compile or reverse any part of the Cloud Services; (iii) use the Cloud Services in order to build a product or service that replicates or attempts to compete with the Cloud Services. . . ." as alleged in Paragraph 50 of the Complaint.

51.     Defendants deny that the term "Cloud Services" includes all services that Channel (H) made available to HTG through various websites as alleged in Paragraph 51 of the Complaint. Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 51 of the Complaint and, therefore, they are denied.

52.     Defendants admit that the purported agreement between HTG and Channel (H) with an effective date of October 29, 2016 provides in part: "You are not granted any title or intellectual property rights in or to any soli ware provided as part of the Cloud Services, and you may only use that software in connection with the Cloud Services as permitted under this Agreement." Defendants deny the remaining allegations in Paragraph 52 of the Complaint.

53.     Defendants admit that Section 30 of the purported agreement between HTG and Channel (H) with an effective date of October 29, 2016 defines the term "Confidential Information" for use by both parties to said agreement, which expressly *excludes*: "(i) information that is independently developed by a non-disclosing party  without the use of the disclosing party's Confidential Information . . . ; (ii) information that is known by a non-

disclosing party prior to disclosure by the disclosing party . . . ; or (iii) information that is or becomes generally available to the non-disclosing party or the public other than through a violation of this Agreement." Defendants further admit that Section 30 of the purported agreement between HTG and Channel (H) with an effective date of October 29, 2016 provides in part: "A party shall not use Confidential Information except as required to perform its obligations under this Agreement."

54.     Defendants admit that CQ and Channel (H) executed that certain document titled "Software License Agreement and Network Service Agreement," with an effective date of December 19, 2016, and that Paragraph 2(a) provides in part: "Customer shall not transfer, license, assign, translate, reverse engineer, decompile, disassemble, modify or duplicate the software or any portion thereof or allow any third party to do any of the foregoing."

55.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the Complaint and, therefore, they are denied.

56.     Defendants admit that CQ and Channel (H) executed that certain document titled "Software License Agreement and Network Service Agreement," with an effective date of December 19, 2016, which contains a non-disclosure clause, which applies to both parties to said agreement. Defendants deny the remaining allegations contained in Paragraph 56 of the Complaint.

57.     Defendants admit that CQ and Channel (H) executed that certain document titled "Non-Disclosure, Confidentiality & Non-Circumvention Agreement," dated May 16, 2017, as alleged in Paragraph 57 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 57 of the Complaint.

58.     Defendants admit that CQ and Channel (H) executed that certain document titled "Non-Disclosure, Confidentiality & Non-Circumvention Agreement," dated May 16, 2017, which provides in part: "[Channel (H)] and CQ will not, directly or indirectly, use Confidential Information belonging to the other for any purpose whatsoever except as required for the discussions among the Parties about the Project. The Receiving Party agrees that it will use the Confidential Information solely for the purpose of evaluating, negotiating and implementing the Project. Accordingly, each of the undersigned hereby agrees not to utilize the Confidential Information to circumvent or to the detriment of the other."

59.     Defendants admit that the that certain document titled "Term Sheet for Private Placement of Common Stock," executed by CQ and Channel (H) on or about May 16, 2017, provides in part: "All non-public, confidential and/or proprietary information of the Company received by CQ in connection with the negotiation of the investment described herein (including the terms provided for herein) shall be treated as strictly confidential and shall not be exploited, disclosed or made use of without the express written consent of the Company."

60.     Defendants deny the allegations contained in Paragraph 60 of the Complaint.

61.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Complaint and, therefore, they are denied.

62.     Defendants admit that they refused to provide Capelli access to their independently developed confidential, proprietary, and trade secret preauthorization solution as alleged in Paragraph 62 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 62 of the Complaint.

63.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Complaint and, therefore, they are denied.

64.     Defendants deny the allegations contained in Paragraph 64 of the Complaint.

65.     Defendants deny that providing medical providers with daily pre-certified patients that qualify for PGx testing is Channel (H)'s "secret sauce" or proprietary to Channel (H) in any way as alleged in Paragraph 65 of the Complaint.

66.     Defendants deny that they induced a mid-level contact at UCSD to cut off Channel (H)'s access to UCSD's database as alleged in Paragraph 66 of the Complaint. Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 66 of the Complaint and, therefore, they are denied.

67.     Defendants admit that certain document titled "Software License Agreement and Network Service Agreement," with an effective date of December 19, 2016, provides in part: "If either party brings a legal action to enforce its rights hereunder, the non-prevailing party shall reimburse the prevailing party for all reasonable costs and expenses, including attorney's fees incurred in connection therewith."

68.     Defendants admit that Section 6 of that certain document titled "Non-Disclosure, Confidentiality & Non-Circumvention Agreement," dated May 16, 2017, provides in part: "Each of the Parties agrees that remedies at law may be inadequate to protect against breach of this agreement, and hereby consents to the granting of injunctive relief, whether temporary, preliminary or final, in favor of the other Party without proof of actual damages."

69.     Defendants deny the allegations contained in Paragraph 69 of the Complaint.

70.     Defendants deny the allegations contained in Paragraph 70 of the Complaint.

71.     Defendants deny the allegations contained in Paragraph 71 of the Complaint.

## COUNT I
## COPYRIGHT INFRINGEMENT

72.     Paragraph 72 of the Complaint requires no response.

73.     Defendants deny the allegations contained in Paragraph 73 of the Complaint.

74.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Complaint and, therefore, they are denied.

75.     Defendants deny the allegations contained in Paragraph 75 of the Complaint.

76.     Defendants deny the allegations contained in Paragraph 76 of the Complaint.

77.     Defendants deny the allegations contained in Paragraph 77 of the Complaint.

78.     Defendants deny the allegations contained in Paragraph 78 of the Complaint.

79.     Defendants deny the allegations contained in Paragraph 79 of the Complaint.

80.     Defendants deny the allegations contained in Paragraph 80 of the Complaint.

81.     Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82.     Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83.     Defendants deny the allegations contained in Paragraph 83 of the Complaint.

84.     Defendants deny the allegations contained in Paragraph 84 of the Complaint. Alternatively, Defendants specifically deny that Plaintiff is entitled to an award of statutory damages under the Copyright Act because the alleged infringement, which Defendants expressly deny, commenced after the effective date of the registration of the alleged copyright.

85.     Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86.     Defendants deny the allegations contained in Paragraph 86 of the Complaint. Alternatively, Defendants specifically deny that Plaintiff is entitled to an award of statutory damages under the Copyright Act because the alleged infringement, which Defendants expressly deny, commenced after the effective date of the registration of the alleged copyright.

87.     Defendants deny the allegations contained in Paragraph 87 of the Complaint. Alternatively, Defendants specifically deny that Plaintiff is entitled to an award of attorney's fees and/or costs under the Copyright Act because the alleged infringement, which Defendants expressly deny, commenced after the effective date of the registration of the alleged copyright.

## COUNT II
## MISAPPROPRIATION OF TRADER SECRETS
## IN VIOLATION OF DELAWARE UNIFORM TRADE SECRETS ACT

88.     Paragraph 88 of the Complaint requires no response.

89.     Defendants deny the allegations contained in Paragraph 89 of the Complaint.

90.     Defendants deny the allegations contained in Paragraph 90 of the Complaint.

91.     Defendants deny the allegations contained in Paragraph 91 of the Complaint.

92.     Defendants deny the allegations contained in Paragraph 92 of the Complaint.

93.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 of the Complaint and, therefore, they are denied.

94.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 of the Complaint and, therefore, they are denied.

95.     Defendants are without personal knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 of the Complaint and, therefore, they are denied.

96.     Defendants deny the allegations contained in Paragraph 96 of the Complaint.

97.     Defendants deny the allegations contained in Paragraph 97 of the Complaint.

98.     Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.     Defendants deny the allegations contained in Paragraph 99 of the Complaint.

100.    Defendants deny the allegations contained in Paragraph 100 of the Complaint.

101.    Defendants deny the allegations contained in Paragraph 101 of the Complaint.

102.    Defendants deny the allegations contained in Paragraph 102 of the Complaint.

103.    Defendants deny the allegations contained in Paragraph 103 of the Complaint.

104.    Defendants deny the allegations contained in Paragraph 104 of the Complaint.

105.    Defendants deny the allegations contained in Paragraph 105] of the Complaint.

106.    Defendants deny the allegations contained in Paragraph 106 of the Complaint.

107.    Defendants deny the allegations contained in Paragraph 107 of the Complaint.

108.    Defendants deny the allegations contained in Paragraph 108 of the Complaint.

109.    Defendants deny the allegations contained in Paragraph 109 of the Complaint.

110.    Defendants deny the allegations contained in Paragraph 110 of the Complaint.

111.    Defendants deny the allegations contained in Paragraph 111 of the Complaint.

112.    Defendants deny the allegations contained in Paragraph 112 of the Complaint.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS
## IN VIOLATION OF DEFEND TRADE SECRETS ACT

113.    Paragraph 113 of the Complaint requires no response.

114.    Defendants deny the allegations contained in Paragraph 114 of the Complaint.

115.    Defendants deny the allegations contained in Paragraph 115 of the Complaint.

## COUNT IV
## BREACH OF CONTRACT

116.     Paragraph 116 of the Complaint requires no response.

117.     Defendants deny the allegations contained in Paragraph 117 of the Complaint.

118.     Defendants deny the allegations contained in Paragraph 118 of the Complaint.

119.     Defendants deny the allegations contained in Paragraph 119 of the Complaint.

120.     Defendants deny the allegations contained in Paragraph 120 of the Complaint.

121.     Defendants deny the allegations contained in Paragraph 121 of the Complaint.

122.     Defendants deny the allegations contained in Paragraph 122 of the Complaint.

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

123.     Paragraph 123 of the Complaint requires no response.

124.     Defendants deny the allegations contained in Paragraph 124 of the Complaint.

125.     Defendants deny the allegations contained in Paragraph 125 of the Complaint.

126.     Defendants deny the allegations contained in Paragraph 126 of the Complaint.

127.     Defendants deny the allegations contained in Paragraph 127 of the Complaint.

128.     Defendants deny the allegations contained in Paragraph 128 of the Complaint.

129.     Defendants deny the allegations contained in Paragraph 129 of the Complaint.

## PLAINTIFF'S PRAYER

130.     The prayer contained in the Complaint requires no response. To the extent it is determined that a response to the prayer contained in the Complaint is required, Defendants deny any and allegations contained therein and deny that Plaintiff is entitled to the relief prayed for in the Complaint.

## AFFIRMATIVE DEFENSES

131.    Defendants raise each and every defense available to them under any applicable law, including the laws of Texas, Delaware, and Nevada. Subject to and without waiving the foregoing denials, Defendants assert the following additional defenses:

132.    Plaintiff's claims are barred in whole or part because Plaintiff failed to state a claim for which relief may be granted.

133.    Plaintiff's claims are barred in whole or part because Defendants are not liable in the capacity in which they have been sued.

134.    Plaintiff's claims are barred in whole or part because the preauthorization solution utilized by Defendants was independently created by Defendants.

135.    Plaintiff's claims are barred in whole or part because Plaintiff delayed registration of the alleged copyright.

136.    Alternatively, Plaintiff's claims are barred in whole or part because Defendants' alleged unauthorized use of the alleged copyright, which unauthorized use Defendants expressly deny, constitutes "fair use" of the alleged copyright.

137.    Plaintiff's claims are barred in whole or part because the alleged copyright was not original and/or lacked copyrightable material.

138.    Plaintiff's claims are barred in whole or part because Plaintiff's alleged trade secret software does not qualify as a trade secret under any applicable law.

139.    Alternatively, Plaintiff's claims are barred in whole or part because Defendants did not misappropriate Plaintiff's alleged trade secret software.

140.    Plaintiff's claims are barred in whole or part because Plaintiff's alleged trade secret software is generally known and/or readily ascertainable by proper means.

141.    Plaintiff's claims are barred in whole or part by the affirmative defense of unclean hands.

142.    Plaintiff's claims are barred in whole or part by the affirmative defense of discharge, which discharge resulted from Plaintiff's repudiation and/or prior material breach of the agreements on which Plaintiff's claims are premised.

143.    Plaintiff's claims are barred in whole or part by the affirmative defense of failure to mitigate damages.

144.    Plaintiff's claims are barred in whole or part by the affirmative defense of fraud, including fraudulent inducement.

145.    Plaintiff's claims are barred in whole or part by the affirmative defense of failure of consideration.

146.    Plaintiff's claims are barred in whole or part because Plaintiff did not perform conditions precedent, including, without limitation, Plaintiff's obligation to provide a fully-automated software solution capable of "instantaneously" electronically accessing patients' medical records and insurance coverage and accurately determining "98% of the time" whether insurance companies would provide coverage for said patients.

147.    Plaintiff's claims are barred in whole or part by the affirmative defense of waiver.

148.    Plaintiff's claims are barred in whole or part by the affirmative defense of ratification.

149.    Plaintiff's claims are barred in whole or part by the affirmative defense of offset.

150.    Plaintiff's claims are barred in whole or part by the affirmative defense of license, both implied and express.

151.    Plaintiff's claims are barred in whole or part by the affirmative defense of payment.

152.    Plaintiff's claims are barred in whole or part because Plaintiff's alleged damages were proximately caused by Plaintiff and not Defendants.

## ATTORNEYS' FEES

153.    Defendants affirmatively plead a claim for attorneys' fees pursuant to the attorney fee provisions within the various agreements on which Plaintiff's claims are premised and under any other applicable law entitling Defendants to recover their attorneys' fees.

## DEFENDANTS' PRAYER

Defendants pray that Plaintiff Channel (H), Inc. take nothing by this suit. Defendants further pray that, upon trial hereof, Defendants recover judgment against Plaintiff for Defendants' attorneys' fees, and for all other actual damages, whether characterized as general or special, to which Defendant is justly entitled, and for such other and further relief, both at law and in equity, to which Defendants are entitled.

Respectfully submitted,

Rafael C. Rodriguez
State Bar No. 24081123
rrodriguez@winstead.com

**WINSTEAD PC**
300 Throckmorton Street, Suite 1700
Fort Worth, Texas 76102
Telephone:     (817) 420-8200
Facsimile: (817) 420-8201


– and –


Bill Warren
State Bar No. 00786331
bill.warren@kellyhart.com
Ryan Roper
State Bar No. 24098347
ryan.roper@kellyhart.com

**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:     (817) 332-2500
Facsimile:     (817) 878-9280

**ATTORNEYS FOR
DEFENDANTS CQ, HTG, AND MEEKER**

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2018, I served the following attorneys of record in accordance with the Federal Rules of Civil Procedure, including via email and electronic service:

Margaret Horton Apgar
Margaret@apgarfirm.com
THE APGAR FIRM
1914 Skillman Street, Suite 110-150
Dallas, Texas 75206

-and-

Brett E. Lewis
brett@ilawco.com
Justin Mercer
Justin@ilawco.com
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, New York 11201

*Attorneys for Plaintiff*
*Channel (H), Inc.*

Rafael C. Rodriguez